**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARBARA BERNAL, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES POSTAL SERVICE, et al., <br><br> Defendants. | Case No.: 1:20-cv-0829 - AWI JLT <br><br> ORDER DISMISSING PLAINTIFF'S AMENDED COMPLAINT WITH LEAVE TO AMEND |

Barbara Bernal is an employee of the United States Postal Service, and asserts she has suffered sex discrimination, age discrimination, retaliation, and intentional infliction of emotional distress in the course of her employment. In addition, she seeks to hold the defendants and unidentified individuals liable for failure to prevent discrimination. (*See generally* Doc. 5) For the reasons set forth below, Plaintiff's amended complaint is **DISMISSED** with leave to amend.

**I.     Screening Requirement**

When a plaintiff proceeds *in forma pauperis*, the Court is required to review the complaint, and shall dismiss the complaint if it is "frivolous, malicious or fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. 1915(e)(2). A plaintiff's claim is frivolous "when the facts alleged arise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

1

The Court must screen the Amended Complaint because it supersedes the previously filed complaint. *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## II.   Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Further, a plaintiff must identify the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks, citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 566 U.S. at 678 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions in the pleading are not entitled to the same assumption of truth. *Id.*

The Court has a duty to dismiss a case at any time it determines an action fails to state a claim, "notwithstanding any filing fee that may have been paid." 28 U.S.C. § 1915e(2). Accordingly, a court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim." *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 593 (1963)). However, leave to amend a complaint may be granted to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III.    Factual Allegations

Plaintiff "is a single Latina female over the age of 40," and first began working for the United States Postal Service in 1997. (Doc. 5 at 2-3, ¶¶ 3, 10) Plaintiff reports that in 2001, she transferred from a clerk position at a USPS facility in Arizona to become a city carrier in Bakersfield, California. (*Id.* at 3, ¶10) In 2016, she "submitted a route bid for the Hillcrest Station, which was ultimately approved" and Plaintiff transferred stations. (*Id.*)

Plaintiff reports Laura Davis became her supervisor in February 2018. (Doc. 5 at 3, ¶ 12) She alleges that she "was subjected to harassment by Laura Davis because of Plaintiff's age, sex, race and for her participation in a joint grievance class action filed against Laura Davis for harassing other city carriers as well as Plaintiff." (*Id.*, ¶ 13) She alleges, "On or about April 17, 2018, 18 City Carriers filed a grievance against Laura Davis with their Local Union, National Association of Letter Carriers, Golden Empire Branch 782." (*Id.*) According to Plaintiff, she "participated in that grievance against Laura Davis and suffered reprisals as a direct result." (*Id.*)

Plaintiff reports that on April 17, 2018, she was called into the office of Martin Patino, one of her supervisors, at which time she received "a verbal warning for not saying 'Good Morning' to Laura Davis," despite the fact that "no policy and procedure… mandate[d] that employees say hello to one another." (Doc. 5 at 4, ¶ 14) On another occasion, Plaintiff reports that Ms. Davis "falsely and maliciously claimed [Plaintiff] did not have a seat belt and did not curb tires" during an "Observation of Driving Practices" on April 27, 2018, and as a result Plaintiff did "not meet[] satisfactory performance" during the observation. (*Id.*, ¶ 15) Plaintiff reports she "received a seven (7) day letter of suspension" on May 18, 2018. (*Id.*, ¶ 16)

Plaintiff reports that she took two weeks of paid time off beginning June 13, 2018, during which time she "had emergency surgery." (Doc. 5 at 4, ¶ 17) According to Plaintiff, once she returned to work in August 2018, Ms. Davis again conducted an "Observation of Driving Practices," and "falsely and maliciously claimed that [Plaintiff] did not use signals on intentions." (*Id.*) Plaintiff alleges, "As a result of Laura Davis' false accusations… [she] was served with a second seven (7) day suspension dated August 29, 2018. (*Id.*)

Plaintiff reports she "filed a harassment claim against Laura Davis with the EEO as a result of the false and malicious accusations levied against her." (Doc. 5 at 4, ¶ 19) Plaintiff reports the EEO scheduled a mediation "between the EEO, [Plaintiff] and Laura Davis," but Ms. Davis failed to appear for the mediation." (*Id.*, ¶ 20) On September 8, 2018, the second suspension was rescinded. (*Id.*)

According to Plaintiff, her requests to "transfer to work at a different location" and "to work in a different capacity with the USPS" were denied. (Doc. 5 at 5, ¶ 22) She asserts, "These denials are not warranted and are in retaliation against her for filing her grievances, and based on her age, and sex." (*Id.*) She asserts that she pursued administrative remedies and was informed of the right to file a civil action "in an appropriate U.S. District Court" on April 8, 2020. (*See* Doc. 1 at 9)

**IV.     Discussion and Analysis**

Based upon the facts alleged, Plaintiff now seeks to hold the USPS and Megan Brennan, Postmaster General, liable for sex discrimination, age discrimination, retaliation in violation of Cal. Gov't Code § 12940, failure to prevent retaliation, and intentional infliction of emotional distress. (Doc. 5 at 5-8)

**A.     Plaintiff's Claims for Discrimination and Retaliation**

Again, Plaintiff's First, Second, and Fourth Causes of Action are for sex discrimination and failure to prevent discrimination under Cal. Gov't Code §12940. (Doc. 5 at 5-7) In addition, her Third Cause of Action is for retaliation. (*Id.* at 7) As the Court informed Plaintiff previously it is well-settled that Title VII is the <u>exclusive</u> remedy for claims of sexual discrimination and retaliation arising out of federal employment. *See Brown v. GSA*, 425 U.S. 820, 829 (1976) (stating that Title VII is "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination"); *see also Phelps v. U.S. Gen. Serv. Agency*, 2008 WL 4287941 at *2 (N.D. Cal. 2008)

("Title VII is the exclusive remedy for all acts of discrimination by the federal government, whether the alleged discrimination is based on race, religion, sex, national origin, or retaliation"). Likewise, the Age Discrimination in Employment Act ("ADEA") "is the exclusive remedy for age discrimination claims by federal employees." *Ahlmeyer v. Nevada Systems of Higher Educ.*, 555 F.3d 1051, 1075 n.5 (9th Cir. 2009).

Because Plaintiff employed by the federal government as a carrier with the United States Postal Service, her claims for discrimination and retaliation under state law fail and must be addressed under Title VII and the ADEA. *See Brown*, 425 U.S. at 829; *see also Loeffler v. Frank,* 486 U.S. 549 (1988) (addressing a mail carrier's claims for discrimination under Title VII); *Walker v. United States DOC*, ("The Ninth Circuit has made clear that Title VII and the ADEA provide the exclusive remedies for discrimination based on race, sex, religion, national origin, age; harassment; and retaliation in federal employment"). Consequently, Plaintiff's First, Second, Third, and Fourth Claims for Relief are **DISMISSED**.

### B. Discrimination and Retaliation Title VII

Title VII provides it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993). In addition, Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this [title] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]…" 42 U.S.C. § 2000e-3(a).

#### 1. Discrimination

The Supreme Court determined Title VII guarantees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). A plaintiff may state a cognizable claim for discrimination in violation of Title VII by proving disparate treatment or by establishing the existence of a hostile work environment. *See Sischo-Nownejad v. Merced Community College Dist*., 934 F.2d 1104, 1109 (9th Cir. 1991).

### a. Disparate treatment

An individual suffers disparate treatment in her employment when "she is singled out and treated less favorably than others similarly situated." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). "[T]o assert a valid Title VII claim for sex discrimination, a plaintiff must make out a prima facie case establishing that the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect on the basis of gender." *Jespersen v. Harrah's Operating*, 444 F.3d 1104, 1109 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Harriss v. Pan Am. World Airways, Inc.*, 649 F.2d 670, 673 (9th Cir. 1980).

As a female, Plaintiff is a member of a protected class. *See, e.g., Berg v. Cal. Horse Racing Bd.*, 419 F.Supp. 2d 1219, 1230 (E.D. Cal. 2006). However, Plaintiff fails to allege facts sufficient to support a conclusion that she was discriminated against because she is female. There are no facts demonstrating that Plaintiff was treated differently than her male coworkers, or that her male coworkers—with qualifications similar those of Plaintiff— were treated more favorably. Thus, Plaintiff fails to state a cognizable claim for disparate treatment under Title VII. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citation omitted).

### b. Hostile work environment

To state a claim under Title VII for hostile work environment based upon sexual harassment, an employee must allege: "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. California Dept. of Corrections*, 419 F.3d 885, 892 (9th Cir. 2005) (citation omitted). The "severe or pervasive" element has both objective and subjective components, and courts consider "not only the feelings of the actual victim, but also 'assume the perspective of the reasonable victim.'" *EEOC v. Prospect Airport Servs.*, 621 F.3d 991, 998 (9th Cir. 2010) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000)). Because Plaintiff has not identified any verbal or physical conduct of a sexual nature by her coworkers or supervisors, she has not alleged facts that support a claim for discrimination based on a hostile work environment.

///

### 2. Retaliation

An "employer can violate the anti-retaliation provisions of Title VII in either of two ways: (1) if the adverse employment action occurs because of the employee's opposition to conduct made unlawful [by Title VII]; or (2) if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). To state a cognizable a claim for retaliation in violation of Title VII, a plaintiff must allege: (1) she engaged in protected activity; (2) her employer subjected her to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Bleeker v. Vilsack*, 468 Fed. App'x 731, 732 (9th Cir. 2012); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

#### a. Protected activity

Conduct constituting a "protected activity" under Title VII includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and "engaging in other activity intended to oppose an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted). The Ninth Circuit determined that "an employee who complains of a practice that has a disproportionate impact on a protected group complains of unlawful discrimination and is protected by the opposition clause." *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1157 (9th Cir. 1982). The employee need not "be aware that the practice is unlawful under Title VII at the time of the opposition in order for opposition to be protected." *Id.*

Plaintiff alleges that city carriers, including Plaintiff, filed a grievance for harassment "against Laura Davis with their Local Union, National Association of Letter Carriers, Golden Empire Branch 782." (Doc. 5 at 3-4, ¶ 13) Such action may be "protected activity" under Title VII. *See Raad*, 323 F3d. at 1197.

#### b. Adverse employment action

"[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks, citation omitted). The Ninth Circuit determined "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." Ray, 217 F.3d at

1240.  For example, "[t]ransfers of job duties and undeserved performance ratings . . . constitute adverse employment decisions." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  In addition, "dissemination of adverse employment references" constitutes an adverse employment action. *Hashimoto*, 118 F.3d at 674.

      Plaintiff alleges that in April 2018, Ms. Davis made false statements following an "Observation of Driving Practices," which resulted in a finding that Plaintiff did "not meet[] satisfactory performance" and a seven-day suspension.  (Doc. 5 at 4, ¶¶ 15-16) Plaintiff asserts that in August 2018, Ms Davis again made "false accusations" following an observation, which resulted in a second seven-day suspension, though it was later rescinded.  (*Id.*, ¶¶ 17-20) Further, Plaintiff contends her requests to transfer locations and work in a different capacity have been denied.  (*Id.* at 5, ¶ 22)  Such actions may qualify as adverse employment actions under Title VII.  *See Yarztzoff*, 809 F.2d at 1376; *Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1013 (9th Circ. 2018) (observing the denial of a transfer request may be an adverse employment action where such transfer would be "a material employment benefit").  Thus, the facts alleged support a conclusion Plaintiff suffered an adverse employment action under Title VII.

                *c.*    *Causal link*

      The requisite causal link between protected activity and an adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff,* 809 F.2d at 1375.  Notably, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

      Plaintiff asserts she joined a grievance for harassment against Laura Davis on April 17, 2018, and ten days later Ms. Davis "falsely and maliciously claimed [Plaintiff] did not have a seat belt and did not curb tires" during an "Observation of Driving Practices," which resulted in a finding that Plaintiff did "not meet[] satisfactory performance."  (Doc. 5 at 3-4, ¶¶ 13, 15) The close temporal proximity may support a finding of causation. *See, e.g., Yartzoff*, 809 F.2d at 1376 (inferring causation where adverse employment actions took place less than three months after the plaintiff's complaint

8

where his supervisors were aware of his Title VII charges and his participation in administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.,* 79 F.3d 859, 869-70 (9th Cir. 1996) (finding causal link where alleged retaliation followed within months of protected activity where supervisor knew of the employee's complaint). However, Plaintiff fails to allege facts to support a conclusion that Ms. Davis had been notified by the Union of the grievance filed or that Plaintiff was one of the carriers who filed the grievance. Thus, the facts alleged are insufficient to support a causal link between Plaintiff's protected activity and the actions taken by Ms. Davis.

### C. Age Discrimination under the ADEA

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 … but less than 70 years of age." 29 U.S.C. §631(a); *see also Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1280 (9th Cir. 2000).

To state a prima facie case of an ADEA violation, the plaintiff must allege she (1) belonged to the protected class; (2) was satisfactorily performing her job; (3) was terminated, rejected for employment, or subjected to another adverse employment action; and (4) "was replaced by a substantially younger employee with equal or inferior qualifications or some other circumstances that would lead to an inference of age discrimination." *Brazill v. Cal. Northstate College of Pharm., LLC*, 904 F.Supp.2d 1047, 1053 (E.D. Cal. 2012) (citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000); *Rose v. Wells Fargo & Co*., 902 F.2d 1417, 1421 (9th Cir. 1990)). In the alternative, a plaintiff may state a prima facie case by identifying direct evidence of age discrimination. *See Schnidrig v. Columbia Machine, Inc*., 80 F.3d 1406, 1409 (9th Cir. 1996).

Plaintiff asserts that she is over 40 years old. (Doc. 5 at 2, ¶ 3) Thus, she belongs to the protected class. In addition, Plaintiff suggests she was performing her job satisfactorily, with the assertion that Ms. Davis' false reports resulted in a finding that Plaintiff did "not meet[] satisfactory performance." (*See id.* at 3-4, ¶¶ 13, 15) Furthermore, as discussed above, Plaintiff has identified adverse employment actions. However, Plaintiff has not identified any facts that supports a conclusion she suffered from age discrimination, such as younger employees receiving the transfers Plaintiff

requested to different locations or positions, or that disparaging remarks were made to Plaintiff regarding her age. Thus, the Court is unable to find Plaintiff states a cognizable claim for age discrimination.

### D. Intentional Infliction of Emotional Distress

Under California law, a claim for intentional infliction of emotional distress requires a plaintiff to identify "outrageous conduct" to that caused the plaintiff emotional distress. *Helgeson v. American Int'l Group*, 44 F.Supp.2d, 1091, 1095 (S.D. Cal. 1999). Significantly, however, "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society…. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996). Thus, even if decisions such as performance refuse and work assignments are "improperly motivated," a plaintiff may not satisfy the "standard of outrageous conduct beyond all bounds of decency." *Helgeson*, 44 F.Supp.2d at 1095.

Based upon the facts alleged, Plaintiff has not identified any outrageous conduct by her employer that would support a claim for intentional infliction of emotional distress, and her Fifth Claim for Relief is **DISMISSED** with leave to amend.

### V. Conclusion and Order

For the reasons set forth above, the Court is unable to find Plaintiff states a cognizable claim. However, the factual deficiencies may be cured by amendment, and leave to amend is appropriate. *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987); *see also Lopez*, 203 F.3d at 1128. Therefore, Plaintiff will be given **one final opportunity** to file a complaint curing the deficiencies identified in this order.[1]

The amended complaint must bear the docket number assigned this case and must be entitled "Second Amended Complaint." Plaintiff is advised that an amended complaint supersedes the original

---

[1] The Court previously informed Plaintiff that Title VII and the ADEA provide the exclusive remedies for her discrimination claims and provided the applicable legal standards for Plaintiff. (*See* Doc. 4 at 4-9) Inexplicably, Plaintiff has ignored the information provided by the Court, and filed an amended complaint that was nearly identical to the initial pleading, including incorrect paragraph numbers. (*See, e.g.,* Doc. 5 at 6) Plaintiff merely added allegations related to suffering from post-traumatic stress disorder rather than "mental anguish," the number of hours of work she is assigned, and that no corrective actions were made related to the actions of her supervisor. (*Compare* Doc. 1 *with* Doc. 5, ¶¶ 21, 27, 31, 47) Rather than duplicating the same document once again, Plaintiff **SHALL** endeavor to cure the factual and legal deficiencies identified by the Court.

complaint. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). In addition, the amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. The amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint." Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567. Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's Amended Complaint is **DISMISSED** with leave to amend; and
2. Within thirty days from the date of service of this order, Plaintiff **SHALL** file a Second Amended Complaint.

**If Plaintiff fails to comply with this order to file a Second Amended Complaint, the action may be dismissed for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated:   **July 26, 2020**                    **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE