1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10

11 | BARBARA BERNAL,                          ) Case No.: 1:20-cv-0829 - AWI JLT
                                             )
12 |              Plaintiff,                  ) FINDINGS AND RECOMMENDATIONS
                                             ) DISMISSING PLAINTIFF'S AMENDED
13 |      v.                                  ) COMPLAINT WITHOUT LEAVE TO AMEND
                                             )
14 | UNITED STATES POSTAL SERVICE, et al.,    )
                                             )
15 |              Defendants.                 )
                                             )
16 | _____ )

17          Barbara Bernal is an employee of the United States Postal Service and asserts she has suffered

18   retaliation in violation of Title VII and intentional infliction of emotional distress in the course of her

19   employment.  In addition, she seeks to hold the defendants and unidentified individuals liable for

20   failure to prevent retaliation under Cal. Gov't Code § 12940.  (*See generally* Doc. 5)  For the reasons

21   set forth below, the Court recommends Plaintiff's Second Amended Complaint be **DISMISSED**

22   without leave to amend.

23   **I.      Screening Requirement**

24          When a plaintiff proceeds *in forma pauperis*, the Court is required to review the complaint, and

25   shall dismiss the complaint if it is "frivolous, malicious or fails to state a claim on which relief may be

26   granted; or . . . seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.

27   1915(e)(2).  A plaintiff's claim is frivolous "when the facts alleged arise to the level of the irrational or

28   the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."

1

*Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

The Court must screen the Second Amended Complaint because it supersedes the previously filed complaints.  *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## II.    Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a).  The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner.  *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  Further, a plaintiff must identify the grounds upon which the complaint stands.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks, citations omitted).  Conclusory and vague allegations do not support a cause of action.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 566 U.S. at 678 (citations omitted).  When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal

2

conclusions in the pleading are not entitled to the same assumption of truth.  *Id.*

The Court has a duty to dismiss a case at any time it determines an action fails to state a claim, "notwithstanding any filing fee that may have been paid."  28 U.S.C. § 1915e(2).  Accordingly, a court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim."  *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 593 (1963)).  However, leave to amend a complaint may be granted to the extent deficiencies of the complaint can be cured by an amendment.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III.    Factual Allegations

Plaintiff "is a single Latina female over the age of 40," who first began working for the United States Postal Service in 1997.  (Doc. 7 at 2-3, ¶¶ 3, 10)  Plaintiff reports that in 2001, she transferred from a clerk position at a USPS facility in Arizona to become a city carrier in Bakersfield, California.  (*Id.* at 3,  ¶10)  In 2016, she "submitted a route bid for the Hillcrest Station, which was ultimately approved" and Plaintiff transferred stations.  (*Id.*)

Plaintiff reports Laura Davis became her supervisor in February 2018.  (Doc. 7 at 3, ¶ 12) She alleges Manuel Davis, the brother of Laura Davis, "was also a supervisor of Plaintiff with the USPS."  (*Id.*)  Plaintiff asserts she "was subjected to harassment by Laura Davis for belief [sic] because of Plaintiff's involvement of sexual text messages between [Plaintiff] and Manuel Davis and for Ms. Bernal's participation in a join[t] grievance class action filed against Laura Davis for harassing other city carriers as well as Plaintiff."  (*Id.*, ¶ 13)

She asserts that on or about April 17, 2018[1], "18 City Carriers, including [Plaintiff], filed a grievance against Laura Davis with their Local Union, National Association of Letter Carriers, Golden Empire Branch 782."  (Doc. 7 at 3-4, ¶14)  According to Plaintiff, she "participated in that grievance against Laura Davis and suffered reprisals as a direct result."  (*Id.* at 4, ¶ 14)

Plaintiff reports that on April 17, 2018, she was called into the office of Martin Patino—another one of her supervisors— at which time Plaintiff received "a verbal warning for not saying 'Good

---

[1] In the prior complaints, Plaintiff identified the grievance date as April 17, 2018.  (Doc. 1 at 3, ¶ 13; Doc. 5 at 3, ¶ 13)  Thus, it appears the April 7 date in the Second Amended Complaint was a typographical error.

Morning' to Laura Davis." (Doc. 7 at 4, ¶ 15)  However, Plaintiff asserts "no policy and procedure… mandates that employees say hello to one another." (*Id.*)

She alleges that on April 27, 2018, Ms. Davis "falsely and maliciously claimed [Plaintiff] did not have a seat belt and did not curb tires" during an "Observation of Driving Practices." (Doc. 7 at 4, ¶ 16)  As a result, Plaintiff did "not meet[] satisfactory performance" during the observation. (*Id.*) Plaintiff was issued "a Fact-finding result of not meeting satisfactory performance," which Plaintiff denied. (*Id.*) Plaintiff reports she "received a seven (7) day letter of suspension" on May 18, 2018. (*Id.*, ¶ 17)

Plaintiff reports that she took two weeks of paid time off beginning June 13, 2018, during which time she "had emergency surgery." (Doc. 7 at 4, ¶ 20)  According to Plaintiff, once she returned to work in August 2018, Ms. Davis again conducted an "Observation of Driving Practices," and "falsely and maliciously claimed that [Plaintiff] did not use signals on intentions." (*Id.* at 4-5, ¶ 22)  Plaintiff alleges, she "was served with a second seven (7) day suspension dated August 29, 2018. (*Id.* at 5, ¶ 24)

Plaintiff reports she "filed a harassment claim against Laura Davis with the EEO as a result of the false and malicious accusations levied against Plaintiff." (Doc. 7 at 4, ¶ 25) On September 8, 2018, Plaintiff's second suspension was rescinded. (*Id.* ¶ 26)  Plaintiff reports that at the time she was notified of the rescinded suspension, mediation was scheduled for September 8, 2018, "between the EEO, [Plaintiff] and Laura Davis." (*Id.*, ¶ 26) After Ms. Davis failed to appear, "[t]he mediation was abruptly canceled by the United States Postal Service." (*Id.*)

According to Plaintiff, her request "to work in a different capacity with the USPS" was denied. (Doc. 7 at 5, ¶ 29)  She asserts, "These denials are not warranted and are in retaliation against her for filing her grievances." (*Id.*)  She reports that she pursued administrative remedies and was informed of the right to file a civil action "in an appropriate U.S. District Court" on April 8, 2020. (*See* Doc. 1 at 9)

## IV.    Discussion and Analysis

Based upon the facts alleged, Plaintiff now seeks to hold the USPS and Megan Brennan, Postmaster General, liable for the following causes of action: (1) retaliation in violation of Title VII of the Civil Rights Act, (2) failure to prevent retaliation in violation of Cal. Gov't Code § 12940; and (3) intentional infliction of emotional distress. (Doc. 7 at 6-8)

4

A.     **Title VII**

Title VII provides it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this [title] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]…" 42 U.S.C. § 2000e-3(a).  An "employer can violate the anti-retaliation provisions of Title VII in either of two ways: (1) if the adverse employment action occurs because of the employee's opposition to conduct made unlawful [by Title VII]; or (2) if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).  To state a cognizable a claim for retaliation in violation of Title VII, a plaintiff must allege: (1) she engaged in protected activity; (2) her employer subjected her to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.  *Bleeker v. Vilsack*, 468 Fed. App'x 731, 732 (9th Cir. 2012); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

1.     Protected activity

Conduct constituting a "protected activity" under Title VII includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and "engaging in other activity intended to oppose an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted).  The Ninth Circuit determined that "an employee who complains of a practice that has a disproportionate impact on a protected group complains of unlawful discrimination and is protected by the opposition clause." *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1157 (9th Cir. 1982).  The employee need not "be aware that the practice is unlawful under Title VII at the time of the opposition in order for opposition to be protected." *Id.*

Plaintiff alleges that city carriers, including Plaintiff, filed a grievance for harassment "against Laura Davis with their Local Union, National Association of Letter Carriers, Golden Empire Branch 782."  (Doc. 7 at 3-4, ¶ 14)  Such action may be "protected activity" under Title VII.  *See Raad*, 323 F3d. at 1197.

///

5

### 2.    Adverse employment action

"[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks, citation omitted). The Ninth Circuit determined "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." Ray, 217 F.3d at 1240. For example, "[t]ransfers of job duties and undeserved performance ratings . . . constitute adverse employment decisions." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). In addition, "dissemination of adverse employment references" constitutes an adverse employment action. *Hashimoto*, 118 F.3d at 674.

Plaintiff alleges that in April 2018, Ms. Davis made false statements following an "Observation of Driving Practices," which resulted in a finding that Plaintiff did "not meet[] satisfactory performance" and a seven-day suspension. (Doc. 7 at 4, ¶ 16) Plaintiff also asserts that in August 2018, Ms Davis again made "false accusations" following an observation, which resulted in a second seven-day suspension, though it was later rescinded. (*Id.*, ¶¶ 22-26) Further, Plaintiff contends her request to work in a different capacity was denied. (*Id.* at 5, ¶ 29) Such actions may qualify as adverse employment actions under Title VII. *See Yarztzoff*, 809 F.2d at 1376; *Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1013 (9th Circ. 2018) (observing the denial of a transfer request may be an adverse employment action where such transfer would be "a material employment benefit"). Thus, the facts alleged support a conclusion Plaintiff suffered an adverse employment action under Title VII.

### 3.    Causal link

The requisite causal link between protected activity and an adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1375. Notably, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Plaintiff asserts she joined a grievance for harassment against Laura Davis on April 17, 2018, and ten days later Ms. Davis "falsely and maliciously claimed [Plaintiff] did not have a seat belt and

did not curb tires" during an "Observation of Driving Practices," which resulted in a finding that Plaintiff did "not meet[] satisfactory performance." (Doc. 7 at 3-4, ¶¶ 14, 16)

As the Court previously explained, the close temporal proximity may support a finding of causation. *See, e.g., Yartzoff*, 809 F.2d at 1376 (inferring causation where adverse employment actions took place less than three months after the plaintiff's complaint where his supervisors were aware of his Title VII charges and his participation in administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.,* 79 F.3d 859, 869-70 (9th Cir. 1996) (finding causal link where alleged retaliation followed within months of protected activity where supervisor knew of the employee's complaint). However, Plaintiff again fails to allege facts to support a conclusion that Ms. Davis had been notified by the Union of the grievance filed or that Plaintiff was one of the carriers who filed the grievance. Further, there are no facts alleged that Ms. Davis was involved in the denial of Plaintiff's request for different work, or that the individual who denied the request was aware of the grievance. Thus, the facts alleged are insufficient to support a causal link between Plaintiff's protected activity and the actions taken, both by Ms. Davis and the denial of her work request.

Notably, the Court has twice informed Plaintiff of the elements of a cause of action under Title VII and the facts necessary to state a cognizable claim. (Doc. 4 at 5-9; Doc. 6 at 5-9) However, Plaintiff has failed to cure the factual deficiencies of her Title VII claim. Thus, the Court finds further leave to amend would be futile and recommends her claim for retaliation under Title VII be **DISMISSED** without leave to amend. *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987); *see also Lopez*, 203 F.3d at 1128.

### B.    Plaintiff's Claim under FEHA

Again, Plaintiff raises a claim under California's Fair Employment and Housing Act, Cal. Gov't Code §12940. (*See* Doc. 7 at 7) However, as the Court informed Plaintiff previously it is well-settled that Title VII is the <u>exclusive</u> remedy for claims related to retaliation and discrimination arising out of federal employment. *See Brown v. GSA*, 425 U.S. 820, 829 (1976) (stating that Title VII is "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment"); *see also Phelps v. U.S. Gen. Serv. Agency*, 2008 WL 4287941 at *2 (N.D. Cal. 2008) ("Title VII is the exclusive remedy for all acts of discrimination by the federal government, whether the alleged

7

discrimination is based on race, religion, sex, national origin, or retaliation").

Because Plaintiff employed by the federal government as a carrier with the United States Postal Service, her claim under FEHA fails.  *See Brown*, 425 U.S. at 829; *see also Loeffler v. Frank,* 486 U.S. 549 (1988) (addressing a mail carrier's claims under Title VII).  Consequently, Plaintiff's Second Claim for Relief is **DISMISSED**.

### C.   Intentional Infliction of Emotional Distress

Under California law, a claim for intentional infliction of emotional distress requires a plaintiff to identify "outrageous conduct" to that caused the plaintiff emotional distress. *Helgeson v. American Int'l Group*, 44 F.Supp.2d, 1091, 1095 (S.D. Cal. 1999).  Significantly, however, "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society…. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996).  Thus, even if decisions such as performance reviews and work assignments are "improperly motivated," a plaintiff may not satisfy the "standard of outrageous conduct beyond all bounds of decency." *Helgeson*, 44 F.Supp.2d at 1095.

Based upon the facts alleged, Plaintiff has not identified any outrageous conduct by her employer that would support a claim for intentional infliction of emotional distress.  Again, the Court has informed Plaintiff of the legal standards governing this cause of action, and she has failed to allege facts sufficient to state a cognizable claim.  (*See* Doc. 4 at 9; Doc. 6 at 10) Therefore, the Court finds further leave to amend would be futile and recommends the Third Claim for Relief be **DISMISSED** without leave to amend.

### V.   Findings and Recommendations

For the reasons set forth above, the Court is unable to find Plaintiff states a cognizable claim. The Court has previously granted Plaintiff leave to amend to attempt to cure the factual deficiencies in her claims.  However, Plaintiff has twice failed to plead facts sufficient to support her claims after the Court informed her of the applicable legal standards.  Therefore, the Court finds further leave to amend would be futile.

*///*

Based upon the foregoing, the Court **RECOMMENDS**:

1.       Plaintiff's Second Amended Complaint be **DISMISSED** without leave to amend; and

2.       The Clerk of Court be **DIRECTED** to close this action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).


IT IS SO ORDERED.

Dated:   __**August 31, 2020**__                        _____/s/ **Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE

9