1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10

11  BARBARA BERNAL,                    )  Case No.: 1:20-cv-0829 - AWI JLT
                                       )
12              Plaintiff,             )  FINDINGS AND RECOMMENDATIONS THAT
                                       )  PLAINTIFF PROCEED ONLY ON HER CLAIM
13        v.                           )  FOR A VIOLATION OF TITLE VII
                                       )
14  UNITED STATES POSTAL SERVICE, et al.,  )
                                       )
15              Defendants.            )
                                       )
16  _____ )

17          Barbara Bernal is an employee of the United States Postal Service, and asserts she has suffered

18  retaliation in violation of Title VII and intentional infliction of emotional distress in the course of her

19  employment.  (*See generally* Doc.13)  For the reasons set forth below, the Court finds Plaintiff has

20  stated a cognizable claim under Title VII, but fails to state a claim for intentional infliction of distress.

21  Thus, the Court recommends the claim for intentional infliction of emotional distress be dismissed

22  without prejudice and that Plaintiff proceed only on her cognizable claim.

23  **I.        Screening Requirement**

24          When a plaintiff proceeds *in forma pauperis*, the Court is required to review the complaint, and

25  shall dismiss the complaint if it is "frivolous, malicious or fails to state a claim on which relief may be

26  granted; or . . . seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.

27  1915(e)(2).  A plaintiff's claim is frivolous "when the facts alleged arise to the level of the irrational or

28  the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."

1   *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).  The Court must screen the Third Amended

2   Complaint because it supersedes the previously filed complaints.  *See Forsyth v. Humana*, 114 F.3d

3   1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

4   **II.      Pleading Standards**

5          General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A

6   pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short

7   and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the

8   relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P.

9   8(a).  The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less

10  stringent standards" than pleadings by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

11         A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and

12  succinct manner.  *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  Further, a

13  plaintiff must identify the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534

14  U.S. 506, 512 (2002).  The Supreme Court noted,

15          Rule 8 does not require detailed factual allegations, but it demands more than an
            unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers
16          labels and conclusions or a formulaic recitation of the elements of a cause of action will
            not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further
17          factual enhancement.

18   *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks, citations omitted).  Conclusory

19  and vague allegations do not support a cause of action.  *Ivey v. Board of Regents*, 673 F.2d 266, 268

20  (9th Cir. 1982).  The Court clarified further,

21          [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim
            to relief that is plausible on its face." [Citation]. A claim has facial plausibility when
22          the plaintiff pleads factual content that allows the court to draw the reasonable
            inference that the defendant is liable for the misconduct alleged. [Citation]. The
23          plausibility standard is not akin to a "probability requirement," but it asks for more than
            a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint
24          pleads facts that are "merely consistent with" a defendant's liability, it "stops short of
            the line between possibility and plausibility of 'entitlement to relief.'
25

26  *Iqbal*, 566 U.S. at 678 (citations omitted).  When factual allegations are well-pled, a court should

27  assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal

28  conclusions in the pleading are not entitled to the same assumption of truth.  *Id.*

The Court has a duty to dismiss a case at any time it determines a plaintiff fails to state a claim, "notwithstanding any filing fee that may have been paid." 28 U.S.C. § 1915e(2). Accordingly, a court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim." *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 593 (1963)). However, leave to amend a complaint may be granted to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**III.   Factual Allegations**

Plaintiff "is a single Latina female over the age of 40," who first began working for the United States Postal Service in 1997. (Doc. 13 at 2, ¶ 3) Plaintiff reports that in 2001, she transferred from a clerk position at a USPS facility in Arizona to become a city carrier in Bakersfield, California. (*Id.* at 3, ¶ 10) In 2016, she submitted a "route bid for the Hillcrest Station, which was ultimately approved" and Plaintiff transferred stations. (*Id.*)

Plaintiff reports Laura Davis became her supervisor in February 2018. (Doc. 13 at 3, ¶ 11) She asserts that on 18 city carriers—including Plaintiff—"filed a grievance against Laura Davis with their Local Union, National Association of Letter Carriers, Golden Empire Branch 782" on April 7, 2018. (*Id.* at 3, ¶ 12) Plaintiff alleges that during a meeting "the same day of filing," "Laura Davis was informed of [the] join[t] grievance." (*Id.*, ¶¶ 12-13)

According to Plaintiff, on April 17, 2018, she was called into the office of Martin Patino—another one of her supervisors— at which time Plaintiff received "a verbal warning for not saying 'Good Morning' to Laura Davis." (Doc. 13 at 3, ¶ 14) However, Plaintiff asserts "no Policy or Procedure… mandates that employees say hello to one another." (*Id.*)

She alleges that on April 27, 2018, Ms. Davis followed her for an "Observation of Driving Practices." (Doc. 13 at 3, ¶ 15). Plaintiff contends Ms. Davis "falsely claimed [Plaintiff] did not have her seat belt and did not curb the US Postal Vehicle tires, not meeting satisfactory performance." (*Id.*). As a result, Plaintiff did "not meet[] satisfactory performance" during the observation. (*Id.*) Plaintiff was issued "a Fact-finding result of not meeting satisfactory performance," which Plaintiff denied. (*Id.*) Plaintiff reports she "received a seven (7) day letter of suspension" on May 18, 2018. (*Id.*, ¶ 16)

3

Plaintiff reports that she took two weeks of paid time off beginning June 13, 2018, during which time she "had emergency surgery." (Doc. 13 at 4, ¶ 17) According to Plaintiff, once she returned to work in August 2018, Ms. Davis again conducted an "Observation of Driving Practices" two days later and "falsely and maliciously claimed that [Plaintiff] did not use signals on intentions, after being instructed to do so." (*Id.*, ¶ 18) Plaintiff alleges she "was served with a second seven-day suspension dated August 29, 2018." (*Id.* at 5, ¶ 20)

Plaintiff asserts she "filed a harassment claim against Laura Davis with the EEO on August 21, 2018 as a result of the false and malicious accusations levied against [Plaintiff]." (Doc. 13 at 4, ¶ 21) On September 8, 2018, Plaintiff's second suspension was rescinded. (*Id.* ¶ 22) Plaintiff reports that at the time she was notified of the rescinded suspension, "mediation for the EEO between Ms. Bernal and Laura Davis had been scheduled." (*Id.*) According to Plaintiff, the mediation was canceled after Ms. Davis failed to appear. (*Id.*)

According to Plaintiff, she pursued administrative remedies and was informed of the right to file a civil action "in an appropriate U.S. District Court" on April 8, 2020. (*See* Doc. 1 at 9)

## IV.    Discussion and Analysis

Based upon the facts alleged, Plaintiff now seeks to hold the USPS and Megan Brennan, Postmaster General, liable for the following causes of action: (1) retaliation in violation of Title VII of the Civil Rights Act and (2) intentional infliction of emotional distress. (Doc. 13 at 5-6)

### A.    Title VII

Title VII provides it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this [title] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]…" 42 U.S.C. § 2000e-3(a). An "employer can violate the anti-retaliation provisions of Title VII in either of two ways: (1) if the adverse employment action occurs because of the employee's opposition to conduct made unlawful [by Title VII]; or (2) if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). To state a cognizable a claim for retaliation in violation of Title VII, a plaintiff must allege: (1) she engaged in protected activity; (2) her

4

1   employer subjected her to an adverse employment action; and (3) there is a causal link between the

2   protected activity and the adverse action.  *Bleeker v. Vilsack*, 468 Fed. App'x 731, 732 (9th Cir. 2012);

3   *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

4                    1.      Protected activity

5           Conduct constituting a "protected activity" under Title VII includes filing a charge or

6   complaint, testifying about an employer's alleged unlawful practices, and "engaging in other activity

7   intended to oppose an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough*, 323

8   F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted). The

9   Ninth Circuit determined that "an employee who complains of a practice that has a disproportionate

10  impact on a protected group complains of unlawful discrimination and is protected by the opposition

11  clause." *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1157 (9th Cir. 1982). The

12  employee need not "be aware that the practice is unlawful under Title VII at the time of the opposition

13  in order for opposition to be protected." *Id.*

14          Plaintiff alleges that city carriers, including Plaintiff, filed a joint grievance for against Laura

15  Davis for harassment "with their Local Union, National Association of Letter Carriers, Golden Empire

16  Branch 782."  (Doc. 13 at 3, ¶ 12)  Such action may be "protected activity" under Title VII.  *See Raad*,

17  323 F3d. at 1197.

18                   2.      Adverse employment action

19          "[A]n adverse employment action is one that materially affects the compensation, terms,

20  conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

21  2008) (internal quotation marks, citation omitted). The Ninth Circuit determined "a wide array of

22  disadvantageous changes in the workplace constitute adverse employment actions."  Ray, 217 F.3d at

23  1240.  For example, "[t]ransfers of job duties and undeserved performance ratings . . . constitute

24  adverse employment decisions." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  In addition,

25  "dissemination of adverse employment references" constitutes an adverse employment action.

26  *Hashimoto*, 118 F.3d at 674.

27          Plaintiff alleges that in April 2018, Ms. Davis made false statements following an "Observation

28  of Driving Practices," which resulted in a finding that Plaintiff did "not meet[] satisfactory

5

1  performance" and a seven-day suspension.  (Doc. 7 at 4, ¶ 16) Plaintiff also asserts that in August 2018,

2  Ms. Davis again made "false accusations" following an observation, which resulted in a second seven-

3  day suspension, though it was later rescinded.  (*Id.*, ¶¶ 22-26) Such actions may qualify as adverse

4  employment actions under Title VII.  *See Yarztzoff*, 809 F.2d at 1376.  Thus, the facts alleged support a

5  conclusion Plaintiff suffered an adverse employment action under Title VII.

6          3.     Causal link

7        The requisite causal link between protected activity and an adverse employment action may be

8  "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in

9  protected activities and the proximity in time between the protected action and the allegedly retaliatory

10  employment decision." *Yartzoff*, 809 F.2d at 1375.  Notably, "causation can be inferred from timing

11  alone where an adverse employment action follows on the heels of protected activity."  *Villiarimo v.*

12  *Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

13        Plaintiff asserts she joined a grievance for harassment against Laura Davis on April 17, 2018,

14  and ten days later Ms. Davis "falsely claimed [Plaintiff] did not have her seat belt and did not curb

15  tires" during an "Observation of Driving Practices," which resulted in a finding that Plaintiff did "not

16  meet[] satisfactory performance."  (Doc. 13 at 3, ¶¶ 15)  Further, Plaintiff contends Ms. Davis made

17  similar false claims during an observation in August 2018.  (*Id.* at 4, ¶ 18)

18        Because Ms. Davis was informed of Plaintiff's involvement with the joint grievance, the close

19  temporal proximity supports a finding of causation. *See, e.g., Yartzoff*, 809 F.2d at 1376 (inferring

20  causation where adverse employment actions took place less than three months after the plaintiff's

21  complaint where his supervisors were aware of his Title VII charges and his participation in

22  administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869-70 (9th Cir.

23  1996) (finding causal link where alleged retaliation followed within months of protected activity where

24  supervisor knew of the employee's complaint).  Thus, the Court finds Plaintiff has stated a cognizable

25  claim for retaliation under Title VII.

26      **B.**    **Intentional Infliction of Emotional Distress**

27        Under California law, a claim for intentional infliction of emotional distress requires a plaintiff

28  to identify "outrageous conduct" to that caused the plaintiff emotional distress.  *Helgeson v. American*

*Int'l Group*, 44 F.Supp.2d, 1091, 1095 (S.D. Cal. 1999).  Significantly, however, "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society…. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996).  Thus, even if decisions such as performance reviews and work assignments are "improperly motivated," a plaintiff may not satisfy the "standard of outrageous conduct beyond all bounds of decency."  *Helgeson*, 44 F.Supp.2d at 1095.

Based upon the facts alleged, Plaintiff has not identified any outrageous conduct by her employer that would support a claim for intentional infliction of emotional distress.  Again, the Court has informed Plaintiff of the legal standards governing this cause of action, and she has failed to allege facts sufficient to state a cognizable claim.  (*See* Doc. 4 at 9; Doc. 6 at 10) Therefore, the Court finds further leave to amend would be futile, and recommends the Second Claim for Relief be **DISMISSED** without leave to amend.

## V.      Findings and Recommendations

For the reasons set forth above, the Court is unable to find Plaintiff states a cognizable claim. The Court has previously granted Plaintiff leave to amend to attempt to cure the factual deficiencies in her claims.  However, Plaintiff has twice failed to plead facts sufficient to support her claims after the Court informed her of the applicable legal standards.  Therefore, the Court finds further leave to amend would be futile. Based upon the foregoing, the Court **RECOMMENDS**:

1.      Plaintiff's claim for intentional infliction of emotional distress be **DISMISSED** without leave to amend; and

2.      Plaintiff proceed only on her cognizable claim for a violation of Title VII.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may

waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **December 2, 2020**             **/s/ Jennifer L. Thurston**
                                    UNITED STATES MAGISTRATE JUDGE