UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA BERNAL,<br><br>                    Plaintiff<br><br>          v.<br><br>UNITED STATES POSTAL SERVICE,<br>MEGAN J. BRENNAN, and DOES 1-100,<br><br>                    Defendants | CASE NO. 1:20-CV-0829 AWI CDB<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 29) |

This is an employment related disputed between pro se Plaintiff Barbara Bernal ("Bernal") and Defendants the United States Postal Services ("USPS") and Postmaster General Megan J. Brennan (collectively "Defendants"). The operative complaint is the Third Amended Complaint ("TAC"), which alleges a retaliation claim under Title VII (42 U.S.C. § 2000e-3).[1]  Currently pending before the Court is Defendants' Rule 12(b)(6) motion to dismiss. For the reasons that follow, Defendants' motion will be granted and this case will be closed.

**RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Yoshikawa v. Seguirant,

---

[1] The TAC also alleged a state law intentional infliction of emotional distress claim. However, this claim was dismissed through adoption of a Findings and Recommendation. See Doc. Nos. 14, 16.

41 F.4th 1109, 1114 (9th Cir. 2022).  In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Benavidez, 993 F.3d at 1145.  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Armstrong v. Reynolds, 22 F.4th 1058, 1070 (9th Cir. 2022).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Miller v. Sawant, 18 F.4th 328, 336 (9th Cir. 2022).  Plaintiffs cannot "rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery."  Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1177 (9th Cir. 2021); see Mujica v. AirScan, Inc., 771 F.3d 580, 593 (9th Cir. 2014).  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**FACTUAL BACKGROUND**

From the TAC, Bernal is a Latina female who has worked for the USPS in Kern County, California since October 2001, but has worked for the USPS since December 1997.  Through February 2018, Bernal had performed and executed her job duties without incident or complaints from her supervisors.  In February 2018, Laura Davis was assigned to supervise Bernal.

On April 7, 2018, around 20 letter carriers filed a joint grievance ("the Joint Grievance") with the National Association of Letter Carriers union ("NALC") against Davis for harassment. The Joint Grievance characterized the issue as: "Did management violate Articles 3, 5, 14, 15, 19, the M-39 and/or the Joint Statement on Violence regarding behavior in the workplace, when supervisor Laura Davis . . . created an unpleasant and intimidating work environment, and if so, what is the appropriate remedy?"[2] The Joint Grievance's references to "Articles" refer to articles in the applicable collective bargaining agreement ("CBA"). None of the CBA Articles identified in the Joint Grievance relate to discrimination. See TAC Exhibits at ECF pp. 22-23. The M-39 pertains to the administration of mail services, including maintaining a mutually respectful atmosphere. See id. at ECF p.24. The Joint Statement on Violence does not pertain to discrimination, but does require that persons be treated with dignity and respect, that harassment, intimidation, threats, and bullying not be tolerated, and that the USPS pledges to make its workrooms safer, more harmonious, and more productive. See id. Davis was informed of the Joint Grievance the same day. Bernal was one of the letter carriers who grieved Davis's conduct.

The Joint Grievance was resolved on May 4, 2018 as follows:

> The parties agree that all employees are expected to maintain harmonious working relationships and not to do anything that would contribute to an unpleasant working environment and that the National Agreement sets out the basic rules and rights governing management and employees in the dealings with each other, but it is the front-line manager who controls management's attempt to maintain an atmosphere between employer and employee which assures mutual respect for each other's rights and responsibilities. (M-39. Section 115.4).

Bernal alleges that she suffered reprisals as a direct result of filing/participating in the joint grievance against Davis. Bernal alleges the following examples of retaliation: (1) April 17, 2018 – supervisor Martin Patino gave Bernal a verbal warning for not saying "good morning" to Davis; (2) April 27, 2018 – Davis followed Bernal to observe driving practices and falsely claimed that Bernal did not wear her seat belt and did not curb her vehicle's tires, resulting in an unsatisfactory driving performance; (3) May 18, 2018 – Bernal received a seven day letter of suspension in relation to the April 27 driving observations; (4) August 10, 2018 – Davis followed Bernal to observe driving practices and falsely claimed that Bernal did not use signals; (5) August 18, 2018

---

[2] A copy of the Joint Grievance is attached as an exhibit to the TAC.

1  – Davis ordered Bernal to stop drinking water while Bernal was casing her new letter route; (6)
2  August 29, 2018 – Bernal was served with a second seven day suspension in relation to the August
3  10 driving observations.
4         On August 21, 2018, Bernal filed a harassment complaint with the EEO against Davis
5  based on Davis's false and malicious accusations against Bernal.
6         On September 8, 2018, Bernal received notification that the second seven-day suspension
7  (the August 29 suspension) was being rescinded.
8         A mediation with the EEO involving Davis was scheduled for September 24, 2018.
9  However, the mediation was cancelled because Davis failed to appear.
10
11                              **DEFENDANTS' MOTION**
12     *Defendants' Arguments*
13         Defendants argue that no plausible Title VII retaliation claims have been pled for two
14 reasons.  First, Bernal did not engage in conduct protected by Title VII.  Bernal filed a union
15 grievance that was based on employment materials that did not concern EEO activity or involve
16 race, color, sex, religion, or national origin discrimination.  Because the Joint Grievance was not
17 made in opposition to perceived Title VII violations, there is no protected activity.  Second,
18 Defendants argue that Bernal was not subjected to adverse employment actions.  The TAC
19 identifies the two seven-day suspensions as adverse employment actions.  However, the August
20 2018 suspension was rescinded entirely, and the May 2018 suspension was reduced to a letter of
21 warning and removed from Bernal's file on November 18, 2019.  Rescinded suspensions and
22 USPS letters of warning do not constitute adverse employment actions.  Defendants argue that the
23 retaliation claim should be dismissed without leave to amend because these defects cannot be
24 corrected and Bernal has been given multiple opportunities to state plausible claims.
25         In reply, Defendants argue *inter alia* that Bernal identifies as protected activity an EEO
26 complaint from June 24, 2018, and that she was retaliated against on August 10, 2018.  However,
27 such allegations are not in the TAC.  The TAC only identifies an EEO complaint filed on August
28 21, 2018.  Bernal's contentions regarding the June 24 complaint is inconsistent with the TAC,

                                          4

1  which clearly identifies retaliation based on Bernal's participation in the Joint Grievance as the
2  protected activity at issue.  Further, Bernal's opposition includes a document that references
3  Bernal making a request for an appointment with an EEO counselor on June 24, but the document
4  does indicate that Bernal actually filed an EEO complaint on June 24.  Moreover, there is no
5  indication that Davis was aware of any EEO activity by Bernal on June 24.

*Plaintiff's Opposition*

Bernal argues that the TAC alleges that Davis retaliated against her because of the Joint Grievance and because she filed a June 24, 2018 EEO complaint.  Bernal states that the Joint Grievance did not assert race, color, sex, or national origin discrimination, but Davis nevertheless retaliated against Bernal through the August 10, 2018 driving observation report, which resulted in a seven day suspension on August 29, 2018.  Although not entirely clear, it appears that Bernal alleges that the August 10 observation and suspension were acts of retaliation based on the Joint Grievance and the June 24 EEO complaint.  Bernal contends that the June 24 EEO complaint is protected conduct and that this case should not be dismissed.

*Legal Standard*

Title VII prohibits employers from retaliating against their employers if the employee "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"  Burlington N. & Santa Fe R.R. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)); see also Silver v. KCA, Inc., 586 F.2d 138, 140 (9th Cir. 1978).  To establish a prima facie case of retaliation, a plaintiff must show:  (1) that she undertook a protected activity under Title VII; (2) her employer subjected her an adverse employment action; and (3) there is a causal link between those two events.  Reynaga v. Roseburg Forest Prods., 847 F.3d 678, 693 (9th Cir. 2017).  The "opposition clause" protects employees who opposed reasonably perceived discrimination under Title VII, meaning that the opposed conduct "must fairly fall within the protection of Title VII."  Learned v. Bellevue, 860 F.2d 928, 932 (9th Cir. 1988); see also Toure v. California Dep't of Corr. & Rehab., 773 F. App'x 916, 916 (9th Cir. 2019).  Although the "participation clause" protects employees "who utilized the tools provided by Congress [through Title VII] to protect their rights," the

5

participation clause requires that "the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII;" it is not enough that the employee is participating in some investigation or that the investigation or charge involves "some sort of discrimination." Learned, 860 F.2d at 932; see also Kemsley v. Brennan, 831 F. App'x 865, 866 (9th Cir. 2020). Finally, "adverse employment actions" are non-trivial employment actions that would deter reasonable employees from opposing discrimination under Title VII or participating in a Title VII proceeding. See Reynaga, 847 F.3d at 693.

*Discussion*

1.  Joint Grievance

From the TAC's exhibits and the parties briefing, there is no dispute that the Joint Grievance did not involve or relate to any form of discrimination that is prohibited by Title VII. As discussed above, the various standards identified at issue in the Joint Grievance (Articles in the CBA, the M-39 document, and the Joint Statement on Violence) do not actually deal with discrimination. Moreover, Bernal admits that the Joint Grievance "did not assert race, color, sex, religion, or national origin discrimination under Title VII . . . ." Doc. No. 30 at 1:25-26. This admission is dispositive.

For purposes of the "opposition clause," the practice opposed "must fairly fall within the protection of Title VII." Learned, 860 F.2d at 932. Similarly, for purposes of the "participation clause," the underlying conduct that is being investigated or charged must be reasonably perceived as a type of discrimination that is prohibited by Title VII. See id. Because the documents at issue show, and Bernal admits, that the Joint Grievance had nothing to do with any form of discrimination that is prohibited by Title VII, participating in or co-filing the Joint Grievance does not constitute protected activity. See id. Therefore, since the Joint Grievance is not a form of activity protected by Title VII, no plausible Title VII retaliation is or can be stated. See Reynaga, 847 F.3d at 693; Learned, 860 F.2d at 932. Dismissal without leave to amend is appropriate.[3]

---

[3] Additionally, the Joint Grievance is a process that was established between the NALC and the USPS. See TAC Exhibits. Because the Joint Grievance was not part of a process provided by/through Title VII, Bernal's participation in the Joint Grievance is not covered by the "participation clause." See Learned, 860 F.2d at 932.

### 2. June 24 EEO Complaint

Defendants are correct that the TAC contains no references to any EEO related activity on June 24 or any date in June 2018. Bernal's Title VII retaliation claim is expressly based on Bernal's participation in the Joint Grievance. See TAC ¶ 27. Because the assertions related to a June 24 EEO complaint are found only in Bernal's opposition, her arguments cannot stop the dismissal of the TAC's retaliation claim. See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). However, the Court may consider Bernal's arguments in order to determine whether leave to amend should be granted. See id.

After considering Bernal's arguments relating to a June 24 EEO complaint, the Court concludes that dismissal without leave to amend is appropriate for several reasons. First, the exhibit attached to Bernal's opposition relating to a June 24 EEO complaint does not actually indicate that Bernal filed an EEO complaint on June 24. See Doc. No. 30 at Ex. A. The attached exhibit is a USPS form entitled "Information for Pre-Complaint Counseling" that was signed by Bernal on August 4, 2018, and received by the USPS on August 6, 2018. See id. The first line of the form reads, "On 6/24/2018, I requested an appointment with an Alternative Dispute Resolution Specialist." Id. Under Section B and the subsection "For Retaliation Allegations Only," Bernal wrote: "On 6/24/2018, I engaged in EEO activity." Id. However, immediately after this sentence is a place to write a Case Number, and that section is blank. Therefore, the most that the exhibit supports is an assertion that Bernal requested an appointment with a dispute resolution specialist; the exhibit does not show that Bernal actually filed an EEO complaint of any kind on June 24, 2018.

Second, when describing the "retaliation" and the incident at issue in Sections B and C of the "Information for Pre-Complaint Counseling" form, Bernal wrote: "Retaliation: For not saying good morning," and "On 4/27/18, during negotiation I was verbally attacked and given a direct order to go in the office by not saying good morning." Id. Thus, the basis of any complaint related to June 24, 2018 was Martin Patino ordering Bernal to say "good morning" to Davis and/or giving Bernal a verbal warning for not saying "good morning" to Davis. Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. §

1  2000e-2; Ballou v. McElvain, 29 F.4th 413, 422 (9th Cir. 2022).  There is nothing about Patino's
2  warning for not saying "good morning" to Davis that reasonably implicates any form of
3  discrimination prohibited by Title VII.  Therefore, the alleged June 24 EEO complaint is not
4  protected activity.  See Learned, 860 F.2d at 932.

5       Third, Bernal does not state that Davis was aware of any June 24 EEO complaint, nor does
6  it seem reasonably likely that Davis would be informed of a request by Bernal for Bernal to see a
7  dispute resolution specialist.  This is especially true since it was Patino, not Davis, who gave
8  Bernal a warning for not saying "good morning."  If Davis did not know about any June 24 related
9  EEO activity, that activity could not be the cause of any adverse employment actions.  See Cohen
10 v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

11      Finally, the adverse employment actions identified by Bernal in connection with June 24
12 EEO activity were an unsatisfactory driving observation on August 10, 2018, and a seven day
13 suspension on August 29, 2018 because of the driving assessment.  In the absence of additional
14 information, the only adverse consequence of the August 10 driving observation appears to be the
15 August 29 suspension.  However, rescinded suspensions generally are not considered adverse
16 employment actions.  See, e.g., Kimble v. Donahoe, 511 F. App'x 573, 575 (7th Cir. 2013);
17 Mayers v. Campbell, 87 F. App'x 467, 471 (6th Cir. 2004); Espinoza v. Brennan, 2016 U.S. Dist.
18 LEXIS 169193, *14 (W.D. Tex. Dec. 7, 2016); McDonald v. ST Aerospace Mobile, Inc., 2013
19 U.S. Dist. LEXIS 34557, *14 (S.D. Ala. Mar. 12, 2013); Campbell v. Henderson, 2002 U.S. Dist.
20 LEXIS 13849, *24-*25 (N.D. Ill. July 26, 2002); see also Pennington v. City of Huntsville, 261
21 F.3d 1262, 1267-68 (11th Cir. 2001).  Bernal does not indicate that the rescinded suspension has
22 any continuing employment effects.  Therefore, there is nothing before the Court that could
23 support classifying either the August 10 driving observation or the August 29 rescinded
24 suspension as "adverse employment actions."

25      For these reasons, the Court concludes that Bernal could not successfully amend her
26 complaint to include a Title VII retaliation claim based on any June 24, 2018 EEO related conduct.
27 That is, permitting amendment to allege such a claim would be futile.  Therefore, no further
28 amendments will be permitted.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss (Doc. No. 29) is GRANTED;
2. Plaintiff's Third Amended Complaint is DISMISSED without leave to amend; and
3. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   March 3, 2023

_____
SENIOR  DISTRICT  JUDGE